UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES YOUNG,

            Petitioner,

-vs-

            **No. 07-CV-0371(VEB)**
            **DECISION AND ORDER**

ROBERT A. KIRKPATRICK,

            Respondent.

## INTRODUCTION

Petitioner James Young ("Young") currently has a habeas corpus proceeding before this Court. Previously, Young had filed a motion to have his petition stayed and held in abeyance; the Court denied the motion without prejudice with leave to refile because Young had not set forth sufficient information on which to determine whether a stay would be an appropriate exercise of discretion under *Rhines v. Weber*. Young now has refiled his motion for a stay and has filed a motion to amend his petition. Respondent has opposed both of Young's application.

As respondent argues, Young has failed to establish that a stay is warranted in his case and, for the reasons that follow, the motion to stay and the motion to amend are denied with prejudice.

## DISCUSSION

Based on the submissions currently before the Court, it appears Young seeks to amend his petition to add a claim of ineffective assistance of counsel based upon his attorney's purported failure to have utilized certain allegedly exculpatory discovery material: (1) the City of Buffalo Bureau of Fire Investigation Investigator's Fire Report; (2) the Fire Incident Report; and

-1-

(3) City of Buffalo Incident Report. These documents relate to the fire set at the house of Arkillia Hudson ("Hudson") which Young was convicted of setting. Hudson was Young's estranged girlfriend and the mother of his child. Young also states "that his trial counsel failed to conduct a prompt investigation and abandoned the 'Discovery Doctrine' pursuant to C.P.L. 240," suggesting that trial counsel somehow erred–although it is not clear from Young's pleadings how.  Young also appears to be alleging that the prosecution failed to disclose this information pursuant to its discovery obligation under *Brady v. Maryland*, 373 U.S. 83 (1963).[1]; he has subsequently obtained the tape by means of a Freedom of Information request directed toward the Erie County Clerk's office and the Buffalo Fire Department. Young contends that but for the prosecution's failure to disclose this alleged *Brady* material and defense counsel's deficiencies in pursuing receipt of said material, the result of his trial would have been more favorable. Young argues that the information in the reports would have been critical impeachment material with regard to the testimony of Antone Martin ("Martin"), the current boyfriend of Hudson, who called 911 to report the fire. According to respondent, what petitioner describes as Brady material is nothing more than his attempts to nitpick inconsistencies between information in certain reports and testimony elicited at trial.

The allegations by Young in support of his motion for a stay do not meet the stringent criteria set forth in *Rhines v. Weber*, 544 U.S. 266, 277 (2005). In *Rhines*, the Supreme Court stated,

> [S]tay and abeyance should be available only in limited circumstances. Because

---

[1]  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three components of a true *Brady* violation: that the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that the evidence must have been suppressed by the state, either wilfully or inadvertently; and that prejudice to the petitioner must have ensued.").

> granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> . . .
>
> And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.
>
> . . .
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

544 U.S. at 277-78.

Turning first to *Rhines*' "good cause" requirement, Young has not offered a sufficient justification for why he did not previously exhaust the claim that he was denied *Brady* material. The Supreme Court has not issued any pronouncement regarding the standard for "good cause" in the context of stay-and-abeyance of habeas petitions. *See*, *e.g.*, Bryant v. Greiner, No. 02 Civ. 6121, 2006 WL 1675938, at * 5 (S.D.N.Y., June 15, 2006); *Aessa v. Annetts*, No. 06 CV 5830(ARR), 2007 WL 1299155, at *3 (E.D.N.Y., April 30, 2007). "Some courts outside this Circuit, have analogized the good cause analysis to that of the 'cause' analysis

required to overcome a procedural bar. *Bryant v. Greiner*, 2006 WL 1675938, at * 5 (citations omitted). Other courts have surmised that the Supreme Court likely intended a broader standard in the stay-and-abeyance context, and therefore "good cause" requires a "lesser showing." *Id.* (citations omitted). However, "[e]ven in cases which expressly reject the notion that 'good cause' is analogous to 'cause' for a procedural default, the 'good cause' has arisen from external factors, not petitioner's own decisions." *Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at * 6 (E.D.N.Y. Feb. 8, 2006) (citations omitted).

Respondent notes that the prosecutor complied with her discovery obligations by turning over *Rosario* material (i.e., all statements by witnesses) to defense counsel prior to the commencement of trial.  *See* Resp't Exs. A, B). And, in his "Statement of Facts to Amended Petition", Young admits that after the judgment of conviction was entered and he was sentenced on March 13, 2003, defense counsel provided him with copies of his trial minutes, discovery material and "additional material relative to his indictment." According to Young, this material was then "lost" by the Erie County Holding Center.

However, it was not until more than a year later, on October 13, 2004, that Young made a Freedom of Information Law (F.O.I.L.) request to the Buffalo Fire Department seeking the information at issue. *See* Pet'r Ex. F. Three years later, he filed a petition pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 seeking disclosure of the documents. This application was granted by the court (Drury, J.) on March 27, 2007. One day later, on March 28, 2007, petitioner received the documents he was seeking from the Buffalo Fire Department.

About three months later, Young commenced the instant habeas proceeding; however, he did not assert a claim based on this alleged *Brady* material, despite the fact that he was in

possession of the documents forming the basis of the claim and could have included them in support of his petition. Additionally, Young has failed to explain why he waited three years between his F.O.I.L. request and his C.P.L.R. Article 78 petition. Based upon petitioner's allegations in his renewed motion for a stay, any delay in pursuing this claim was based upon his own deliberate action–or inaction as the case may be.  Thus, Young has failed to establish "good cause" for his failure to exhaust.

Most important, Young has failed to demonstrate that the unexhausted claim relating to the documents received in connection with his F.O.I.L. request to the Buffalo Fire Department is "potentially meritorious." First, Young has not established that the documents in question were not turned over to defense counsel during discovery. Moreover, Young has not made any showing whatsoever that the documents were material to his trial. As best can be gleaned from Young's submissions, it appears that he is arguing that the fire incident reports are incomplete because they do not reference that he–and not just Martin, Hubbard's boyfriend–called 911 to report the blaze. Young submits an affidavit from his friend, Calvin Curtis Caurthon ("Caurthon"), and claims that Caurthon's affidavit establishes that he (Young) called 911 to report the fire. As an initial matter, even assuming for the sake of argument that Caurthon's story is credible (which the Court does not concede), it still does not establish that Young made a phone call to 911 on the day of the incident. Caurthon says Young allegedly called him to tell him that there was a fire at Hubbard's house and that he wanted Caurthon to drive over and see what was going on. When Caurthon went by, Hubbard allegedly told him that she "knew" Young "did it" (i.e., set the fire). Later, after Young had learned that the police were looking to question him, Young called "the Fire Investigator" who did indeed want to talk to him. However,

Caurthon says in his affidavit, Young knew it was a "set up" and did not do so.

The Court cannot see how this affidavit from Caurthon could be construed as either material impeaching or exculpatory evidence. Young was identified at trial by Antone Martin (who knew him). Martin testified that Young was the person who had assaulted him at Hubbard's house on the day before the fire. When Martin and Hubbard returned home and discovered the fire, Martin saw Young standing in front of the fire on the floor which had spread to the curtains in the living room. Even accepting Caurthon's allegations as true, there simply is no reasonable possibility that the outcome of Young's trial would have been different had this information been presented to the jury. And, the documents from the Buffalo Fire Department, standing alone, do not assist Young's defense. Based upon what Young has submitted, the Court is not persuaded that the unexhausted claim is potentially meritorious.

For the foregoing reasons, Young's renewed motion for a stay is **denied with prejudice**. Young's motion to amend the petition is therefore moot, and it is likewise **denied with prejudice**.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   June 26, 2008
         Rochester, New York.